IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**MARIO LADELL MCCLINTON**  MOVANT

V.  NO.: 2:10CR160-SA-JMV

**UNITED STATES OF AMERICA**  RESPONDENT

**MEMORANDUM OPINION AND ORDER**

Mario Ladell McClinton, a federal prisoner, is proceeding *pro se* on an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, to which the government has responded. Having considered the pleadings and the record, including the relevant parts of McClinton's underlying criminal case, along with the relevant law, the Court finds that an evidentiary hearing is unnecessary[1], and that McClinton's § 2255 motion should be denied.

**I. Background Facts and Relevant History**

On June 16, 2011, McClinton, along with twenty-five others, was indicted in a superseding indictment for conspiracy to distribute and possess with intent to distribute in excess of 100 kilograms of a substance containing marijuana in violation of 21 U.S.C. § 841(a), (b)(1)(B) and § 846, which carries a maximum possible penalty of not more than a $5 million dollar fine, and not less than 5 years nor more than 40 years' imprisonment.

The conspiracy involved a co-defendant trafficking marijuana into Mississippi from

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982). Accordingly, if there is no "independent indicia of the likely merit" of the allegations made in the motion, a hearing is not required. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citation omitted).

Texas, where it was given to another co-defendant to store before he distributed it for resale. Doc. #920 at 18. One of the distributors was McClinton. *Id.* McClinton was arrested on July 6, 2011. Doc. #318. William Stennett was McClinton's counsel beginning July 6, 2011. *See* Doc. #312. McClinton subsequently hired Wayne Housley, who became McClinton's attorney of record on or about January 13, 2012. Doc. #452. Housley remained counsel of record until McClinton filed his § 2255 motion with the assistance of new counsel.

Housley filed various pre-trial motions on McClinton's behalf, including a motion to sever, a motion for bond, and a motion requiring the prosecution to give notice of its intent to use prior bad acts. *See* Docs. #475, #476, and #516. The motion to sever and motion for bond were denied, *see* Docs. #479 and #481, and the government filed notice of its intent to use prior bad act evidence on July 12, 2012. Doc. #570. The government also filed an information to establish a prior conviction pursuant to 21 U.S.C. § 851, which, if pursued, would have enhanced McClinton's statutory minimum to 120 months' imprisonment and would have increased his Sentencing Guidelines range. *See* Doc. #169.

On August 1, 2012, the government filed a motion to sever fugitive co-defendants Ruben Castenada and Santiago Villablobos, neither of whom had appeared before the Court. Doc. #652. The Court granted the motion on August 7, 2012. Doc. #666. This case went to trial on August 8, 2012. On August 10, 2012, with the advice of counsel, McClinton entered into a plea agreement and pleaded guilty to count forty-two of the indictment, which charged him with conspiracy to distribute more than 100 kilograms of marijuana. *See* Docs. #677- #678. Pursuant to the plea agreement, McClinton waived his right to appeal and waived his right to bring a § 2255 action. *See* Doc. #920.

Following McClinton's guilty plea, the United States Probation Service prepared its initial presentence investigation report ("PSR"). The PSR held McClinton accountable for conservatively 259 pounds or 117.48 kilograms of marijuana, which resulted in a base offense level of 26. PSR at ¶31, ¶36. It was determined that McClinton had been convicted of a drive-by shooting in 1997, domestic violence in 2002, and the sale of cocaine in 2003. PSR at ¶47, ¶48, and ¶49. Because of these prior offenses, McClinton was designated a career offender, and his base level was enhanced to 34. PSR ¶42. He received a two-point reduction in his base offense level for his acceptance of responsibility, resulting in a base offense level of 32. PSR ¶44. He was under post-release supervision at the time of the instant offense, which added an additional two points to his criminal history. PSR ¶52. Because he was designated a career offender, his criminal history category was VI. *See* PSR ¶ 54; *see also* United States Sentencing Guidelines ("Guidelines"), § 4B1.1(b). McClinton's Guidelines imprisonment range was 210 to 262 months. McClinton's counsel filed numerous objections to the PSR that were denied. *See* Doc. # 921 at 3-10. The Court subsequently granted the government's §5K1.1 motion for a downward departure, and judgment was entered January 8, 2013, sentencing McClinton to serve 168 months of imprisonment followed by 4 years of supervised release. Doc. #854.

On September 30, 2013, McClinton, with the assistance of counsel, filed two motions to vacate his sentence under 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel. Docs. # 983 and #991. On September 26, 2016, he was granted permission to amend his motion to add a claim that his 1997 Mississippi conviction for drive-by shooting is no longer a crime of violence after the decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), thereby rendering his career offender designation invalid. *See* Doc. #1144.

## II. Legal Standard

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. Collateral attack limits a defendant's allegations to those of "constitutional or jurisdictional magnitude." *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Relief under § 2255 is reserved, therefore, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

## III. Waiver

Pursuant to his plea agreement, McClinton waived his right to collaterally attack his conviction or sentence. It is well established that a defendant may waive his constitutional rights as part of a plea agreement, as well as his statutory appeal rights. *United States v. Melacon*, 972 F.2d 566, 567 (5th Cir. 1992) (citing *Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987)); *see also United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). Such waivers are valid if they are informed and voluntary. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

To meet this standard, the defendant must know that he had a right to appeal that he was giving up by agreeing to the waiver. *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). The court bears the responsibility of ensuring "that the defendant fully understands his right to appeal and the consequences of waiving this right." *United States v. Gonzalez*, 259 F.3d 355, 357 (5th Cir. 2001) (citation omitted). Where a plea agreement contains an explicit waiver, and the defendant voices his knowledge and understanding that he is waiving his rights, waivers of appeal are generally enforceable. *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005).

At his change of plea hearing, McClinton stated that he was "pleased with [Housley's] representation of [him] now, but [McClinton] wouldn't have c[o]me this far if [he] would have seen what [he] needed to see." Doc. #920 at 5-6. The following transpired:

> THE COURT: What I need to know and understand is this what you freely and voluntarily want to do this morning.
> MCCLINTON: Yes, ma'am.
> THE COURT: And is it?
> MCCLINTON: Yes, ma'am.
> THE COURT: And do you feel like Mr. Housley has been able to give you adequate advice regarding your decision to enter the plea?
> MCCLINTON: Yes, ma'am.

*Id.* at 6.

The government discussed the factual basis for the plea and the elements that it would have to prove against McClinton beyond a reasonable doubt, both of which included that the amount of drug involved was over 100 kilograms. *Id.* at 9-19. After a synopsis of the plea agreement was read into the record, McClinton stated that he understood and agreed with the plea agreement as read. *Id*. at 14. He also stated that he discussed the terms of the plea agreement and supplement with his counsel before he signed them. *Id*. at 12.

In his plea agreement, McClinton waived his right to collaterally attack the conviction by

5

agreeing to the following language, as read into the record at the hearing:

> Defendant also hereby expressly waives all rights to contest or collaterally attack the conviction and/or sentence and the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought pursuant to Title 28, United States Code, Section 2255.

*Id*. at 13. The Court further inquired into McClinton's understanding:

> THE COURT: You understood that in that provision there is a provision where you waive your right to appeal, a direct appeal as well as any post-conviction appeals or collateral matters? Understand that?
> MCCLINTON: I understand.

*Id*. at 14. Thereafter, the Court inquired of McClinton's counsel:

> THE COURT: And have you discussed with him the discovery in this case and any facts known to you in this case that aid or assist him in making this decision?
> MR. HOUSLEY: Yes, ma'am.
> THE COURT: And do you believe that he understands the charge as well as the consequences of entering
> MR. HOUSLEY: Yes, ma'am.
> THE COURT: And do you believe that he's entering this plea freely, knowingly, and voluntarily?
> MR. HOUSLEY: Yes, ma'am.

*Id*. at 15-16. The following exchange between the Court and McClinton ensued:

> THE COURT: Mr. McClinton, I expect that you've had a conversation with Mr. Housley regarding possible guidelines that might be imposed in this case. Is that correct?
> MCCLINTON: Yes, ma'am.
> THE COURT: And I do not know those guidelines in your case because I know nothing about your criminal history. The important thing for you to know now before entering the plea is this. The guidelines are merely advisory. Do you understand?
> MCCLINTON: Yes, ma'am.
> THE COURT: This court may impose a sentence that is more severe or less severe than called for by the guidelines. Do you understand?
> MCCLINTON: Yes, ma'am.

*Id*. at 16. After the factual basis was recited into the record, the Court asked McClinton whether

he was entering his plea "freely and voluntarily because [he was], in fact, guilty of the conduct

described." *Id*. at 19. McClinton responded, "Yes, ma'am." *Id*. At the end of the change of plea proceeding, the Government withdrew the 21 U.S.C. §851 enhancement.[2] *Id.* at 21.

The record before the Court establishes that McClinton entered into a plea agreement containing a clear, unambiguous waiver that he confirmed he had read and understood at his change of plea hearing, thereby rendering his waiver knowing and voluntary. *See McKinney*, 406 F.3d at 746 (finding waiver knowing and voluntary where defendant stated he understood explicit, unambiguous waiver of appeal). Therefore, McClinton's §2255 claims are barred by the waiver. One exception exists, however: an ineffective-assistance claims survives a § 2255 waiver, but only when the claimed ineffective assistance directly affected the validity of that waiver or the plea itself. *United States v. Hollins*, 97 F. App'x 477, 479, 2004 WL 963250, at *3 (5th Cir. May 4, 2004) (quotation marks omitted); *see also United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002) (noting a defendant "may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by the ineffective assistance of counsel"). Here, McClinton argues that his counsel rendered ineffective assistance by failing to investigate the facts of the case and in misadvising him regarding entering a guilty plea, thereby rendering his plea (and its waivers) invalid and unenforceable. Therefore, this claim is not barred, and the Court considers McClinton's claim that his attorney rendered ineffective assistance of counsel with regard to his guilty plea.

### IV. Ineffective Assistance of Counsel

---

[2] If the enhancement had been maintained against McClinton, his base offense level would have been 37, and his Guidelines range would have been 292-365 months' imprisonment. Withdrawing the enhancement reduced McClinton's mandatory minimum sentence, which also, in effect, reduced his Guidelines offense level by three points.

To make a substantial showing of the denial of his Sixth Amendment right to the reasonably effective assistance of counsel, a movant must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires him to demonstrate "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To establish deficient performance, the movant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. The court's scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. To prove prejudice, the movant must demonstrate that the result of the proceedings would have been different if counsel had performed effectively. *Id*. at 694. The prejudice inquiry does not merely require that the movant raise the "possibility of a different outcome," but rather, it requires the movant to "demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. The Guilty Plea

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, McClinton must show that, absent his counsel's deficiencies, he would have proceeded to trial. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

McClinton cannot demonstrate that the advice to plead guilty was ineffective, as had he

8

not pleaded and been found guilty by the jury, his Guidelines imprisonment range would have been 360 months to life, based upon the § 851 enhancement the government would have sought absent a plea agreement. Because of his cooperation and guilty plea, however, McClinton was sentenced to 168 months' imprisonment. Moreover, McClinton cannot prove that he would have finished the trial absent counsel's alleged deficiencies. In fact, he went to trial and decided to plead guilty after two days, stating that "[he] wouldn't have c[o]me this far if [he] would have seen what [he] needed to see." Doc. #920 at 5-6. These sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (citation omitted); *see also United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002) (affording "great weight to the defendant's statements at the plea colloquy").

Therefore, the Court concludes McClinton has not established either deficient performance or resulting prejudice, and it finds McClinton's allegations that his trial counsel rendered ineffective assistance are conclusory and fail to raise a constitutional issue. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (establishing court cannot consider bald assertions, unsupported by anything in the record, to be of probative evidentiary value); *United States v. Stacener*, 959 F.2d 31, 33 (5th Cir. 1992) (applying *Ross* analysis to § 2255 motion), *see also United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (stating "conclusional allegations" and general claims are insufficient to establish ineffective assistance or to require an evidentiary hearing on that issue).

### B. Remaining Claims of Ineffective Assistance of Counsel

McClinton's remaining claims of ineffective assistance of counsel are barred by his valid plea waiver. However, the Court has nonetheless considered his claims and finds his allegations

are without merit.

## 1. Bill of Particulars

McClinton argues that his counsel performed ineffectively in failing to file a motion for a bill of prticulars, thereby failing to learn who would offer evidence against him. However, the purpose of a bill of particulars is not to provide generalized discovery, but rather, to inform the defendant of the nature and charges against him with enough specificity to enable him to prepare for trial, prevent surprise, and enable him to prevent double jeopardy in a subsequent prosecution. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978); *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973). A motion for a bill of particulars is properly denied where the "indictment itself contain[s] ample allegations to put [the defendant] on notice as to the time, place, and persons involved," *Overton v. United States*, 403 F.2d 444, 447 (5th Cir. 1968), and "sufficiently apprised the defendant[ ] of the accusations which [he] had to be prepared to meet," *United States v. Moseley*, 450 F.2d 506, 509 (5th Cir. 1971).

Commonly, the question of whether a defendant is entitled to a bill of particulars can become one of the sufficiency of the indictment. *See United States v. Beebe*, 792 F.2d 1363, 1366-67 (5th Cir. 1986) ("Because the indictment was sufficient, the district court did not abuse its discretion when it denied appellants' request for a bill of particulars."). An indictment is sufficient if it (1) fairly informs the defendant of the offense charged; (2) fairly informs the defendant of the charges he must defend; and (3) enables a defendant to plead an acquittal or a conviction in bar to future prosecutions for the same offense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

The indictment, as pertinent to McClinton, contends that "[c]ommencing on or about

January 1, 2010, and continuing until on or about November 16, 2010, in the Northern District and elsewhere, . . . Mario Ladell McClinton [and other named co-defendants] . . . did knowingly and wilfully conspire to distribute and possess with intent to distribute in excess of one-hundred (100) kilograms of a substance containing marijuana..." in violation of 21 U.S.C. §§ 841(a)(b)(1)(B) and 846. Doc. #947 at 18. This indictment, which informs McClinton of the charge, as well as the date and location of the offense alleged, was sufficient to allow him to prepare his defense and avoid unfair surprise. Therefore, a bill of particulars was not necessary, and counsel is not ineffective for failing to file meritless motions. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995). Accordingly, McClinton has failed to demonstrate either deficient performance or resulting prejudice as a result of counsel's performance as to this issue, and he is not entitled to § 2255 relief on this claim.

## 2. Speedy Trial

McClinton argues that his counsel was ineffective in failing to move to dismiss charges against him based on the denial of his right to a speedy trial under the Speedy Trial Act, which requires a defendant's trial to commence within seventy non-excludable days from the filing date of the indictment, or the date the defendant appeared before a judicial officer, whichever date occurs last. 18 U.S.C. § 3161(c)(1). However, a multi-defendant prosecution, such as in this case, the speedy trial clock begins to run when the last co-defendant makes his initial appearance in court, or when a motion for severance has been granted. *See United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998); *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994); *see also* 18 U.S.C. § 3161(h)(3)(A) (excluding from seventy-day period any "delay resulting from the absence or unavailability of the defendant or an essential witness") and 18 U.S.C. § 3161(h)(7)

(excluding from the seventy-day period a reasonable time lapse "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"). In this case, the speedy trial clock began running on August 7, 2012, when the fugitive co-defendants were severed. *See United States v. Howell*, 719 F.2d 1258, 1262 (5th Cir. 1983). Accordingly, only one day ticked off of the speedy trial clock before McClinton's trial began. Moreover, the Fifth Circuit has held that delays of less than five years are not enough, by duration alone, to presume prejudice under the Speedy Trial Act. *See United States v. Parker*, 505 F.3d 323, 328-29 (5th Cir. 2007). Accordingly, a motion to dismiss based on an alleged speedy trial violation would not have been successful in this case. Counsel is not required to file futile motions. *See Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). Therefore, the Court finds that McClinton has not shown that his counsel's performance as to this issue was either deficient or prejudiced his defense, and he is not entitled to relief on this claim.

### 3. *James* Hearing

McClinton argues his counsel was ineffective for failing to file a *James* hearing motion, which would have forced the government to determine a conspiracy existed before allowing the statements of co-conspirators to be admitted into evidence. *United States v. James*, 590 F.2d 575, 583 (5th Cir. 1979). However, in *Bourjaily v. United States*, 483 U.S. 171 (1987), the Supreme Court held that in determining the existence of the conspiracy, the co-conspirator statements themselves may be considered by the court in making its preliminary finding. *Bourjaily*, 483 U.S. at 183-84. The *Bourjaily* decision "effectively abolishes [a court's] *James* constraints." *United States v. Perez*, 823 F.2d 854, 855 (5th Cir. 1987).

Defendants are not entitled to a hearing to determine the existence of a conspiracy

preliminary to the admission of co-conspirators' statements under Federal Rule of Evidence 801(d)(2)(E). *United States v. West*, 58 F.3d 133, 141-42 (5th Cir. 1995) (citing *United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992)). In this case, co-defendants had already pleaded guilty to a conspiracy involving McClinton, and the existence of a conspiracy was established at trial. Accordingly, McClinton's request for a *James* hearing would have been denied, and counsel is not required to file futile motions. *Murray*, 736 F.2d at 283. Additionally, McClinton has not alleged any information which, if presented to the Court, could have influenced the sentence ultimately imposed, and therefore cannot demonstrate prejudice as a result of counsel failing to file the motion. McClinton has failed to demonstrate that his counsel's performance as to this issue was either deficient or prejudiced his defense, and he is not entitled to relief on this claim.

### 4. Motion to Dismiss for Lack of Evidence

McClinton argues that his counsel performed ineffectively in failing to move to dismiss the charges against him based on lack of evidence. This is a conclusory argument and fails to raise a constitutional claim. *Sones*, 61 F.3d at 415 n. 5. Moreover, McClinton essentially stated at his change of plea hearing that he would have pleaded guilty earlier if he had seen the evidence against him prior to trial. Doc. #920 at 5. Therefore, McClinton has not shown that his counsel's performance on this issue was either deficient or prejudiced his defense, and he is not entitled to relief on this claim.

### 5. Drug Quantity Alleged in PSR

McClinton contends that counsel rendered ineffective assistance in failing to challenge the drug quantity alleged in the PSR. He fails, however, indicate why counsel should have

13

challenged the drug quantity, or how the information was inaccurate, as is his burden. *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995) ("The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue.") (citation omitted). "Mere objections do not suffice as competent rebuttal evidence." *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998) (citation omitted).

The Court otherwise notes that in evaluating a defendant's base offense level in a drug case, a district court may consider a defendant's relevant conduct. *See, e.g., United States v. Culverhouse*, 507 F.3d 888, 895 (5th Cir. 2007). The United States Sentencing Guidelines define "relevant conduct" as "all acts and omissions" that were either (1) part of a "common scheme or plan" or (2) part of the "same course of conduct" as the offense of conviction. Guidelines, § 1B1.3(a)(2). McClinton's PSR held him accountable for 117.48 kilograms of marijuana, which resulted in a base offense level of 26. Even if McClinton alleges that he only pled to the minimum amount of at least 100 kilograms of marijuana, however, he would nonetheless be at the same Guidelines level of 26. *See* 2011 Guidelines, §2D1.1(a)(5)(c)(7) (involving at least 100 kilograms but less than 400 kilograms of marijuana). Accordingly, an objection to the drug quantity in the PSR would have be meritless. Additionally, McClinton has not alleged any information that would have influenced the sentence imposed had it been presented to the Court. Therefore, the Court finds that McClinton has not shown that his counsel's performance on this issue was either deficient or prejudiced his defense, and he is not entitled to relief on this claim.

### 6. Career Offender Status

McClinton claims that his attorney erroneously advised him that if he pleaded guilty, the government would not seek a career offender designation against him. The Court agrees with the

government that it appears that McClinton is confusing his career offender designation with the 21 U.S.C. § 851 enhancement initially filed by the government in this case. The Court notes that at the close of McClinton's change of plea hearing, the government withdrew its 21 U.S.C. § 851 enhancement against McClinton, thereby reducing his mandatory minimum sentence. Doc. #920 at 21. Additionally, McClinton was advised by the Court at the hearing that the Guidelines were advisory, and that the actual sentence might be more or less severe than called for by the Guidelines. *Id*. at 16. The Court finds that McClinton has failed to demonstrate either deficient performance or resulting prejudice as a result of counsel's performance as to this issue, and he is not entitled to § 2255 relief on this claim.

## V. *Johnson*-Based Challenge

McClinton, proceeding *pro se*, amended his § 2255 motion to include a claim that he should not have career offender status, arguing that he does not have "at least two prior felony convictions of either a crime of violence or a controlled substance offense" sufficient to warrant the designation. Guidelines, §4B1.1(a). Specifically, he argues that his 1997 conviction for the offense of drive-by shooting no longer qualifies as a "crime of violence" under the Guidelines after the Supreme Court decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held a portion of the definition of a violent felony under the Armed Career Criminal Act unconstitutionally vague.[3]

*Johnson* invalidated the statue's "residual clause," which defined a violent felony to include offenses "otherwise involv[ing] conduct that presents a serious potential risk of physical

---

[3] McClinton does not contest that his 2003 conviction for the sale of cocaine is an applicable prior controlled substance offense.

injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). McClinton claims that the decision in *Johnson* invalidates the similarly-worded definitions of "crime of violence" in the Guidelines. Under the Guidelines, a "crime of violence" is a state or federal offense, punishable by more than one year of imprisonment that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [elements clause], or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives [enumerated offenses clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [residual clause].[4]

Guidelines, §4B1.2. Relying on his indictment and his statements at his guilty plea for the offense, McClinton argues that there is no finding as to what he was alleged to have done in committing the prior offense, or whether the victim was actually injured. *See, e.g.*, Doc. #1144-1. He contends that because the offense under Mississippi law may be committed recklessly, it is not categorically a crime of violence and, therefore, violates the principles in *Johnson*. *Id.*

The Court finds that *Johnson*'s holding does not apply to the Guidelines in this Circuit. *See, e.g., United States v. Jeffries*, 829 F.3d 769, 769-770 (5th Cir. 2016) ("[O]ur court has ruled that the Supreme Court has not applied *Johnson*. . . to the career offender sentencing guidelines definition in [Guideline] § 4B1.2(a)(2)."). Accordingly, McClinton is not entitled to relief on this issue.

---

[4] The United States Sentencing Commission amended Guideline 4B1.2, effective August 1, 2016, making changes to the definition of "crime of violence ." *See* United States Sentencing Commission, "Reader-Friendly" Version of Amendment on Crime of Violence, available at http://www.ussc.gov/guidelines/amendments/reader-friendly-version-amendment-crime-violence (last visited December 1, 2016).

However, even if *Johnson* did invalidate the residual clause of the Guidelines' definition of a crime of violence[5], only one definitional clause was invalidated by the *Johnson* decision. *See Johnson*, 135 S. Ct. at 2563 (finding decision "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony"). Therefore, McClinton's career offender designation should otherwise be upheld if the crime of drive-by shooting in Mississippi is a crime of violence pursuant to the "elements" clause of the definition, i.e. if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." §4B1.2(a)(1).

Courts use the categorical approach to determine whether a prior conviction qualifies as a crime of violence. *See Taylor v. United States*, 495 U.S. 575, 577-78 (1990). This approach looks at the fact of conviction and the statutory definition of the offense, rather than the underlying conduct by the defendant, to determine whether the offense contains an element involving the use of force. *See, e.g., United States v. Dominguez*, 479 F.3d 345, 347 (5th Cir. 2007).[6] At the time of McClinton's crime, Mississippi defined the crime of drive-by shooting as follows:

> A person is guilty of a drive-by shooting if he attempts, other than for lawful self-defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme

---

[5] The Supreme Court has granted certiorari to answer this question. *Beckles v. United States*, 136 S. Ct. 2510 (2016).

[6] When the statute is "divisible," that is, it contains alternate elements that create different crimes, courts may use a modified categorical approach and consider limited documents, such as the charging document, to determine which alternative formed the basis of the prior conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2281, 2285 (2013); *see also Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016).

> indifference to the value of human life by discharging a firearm while in or on a vehicle.

Miss. Code Ann. § 97-3-109(1).

McClinton does not dispute that attempting to cause bodily injury or causing bodily injury purposefully or knowingly fit the "elements" clause of §4B1.2. He argues, however, that committing the crime of discharging a firearm while in or on a vehicle "recklessly under circumstances manifesting extreme indifference to the value of human life" is not an element of the use or attempted use of physical force. However, in *Voisine v. United States*, 136 S. Ct. 2272 (2016), the Supreme Court held that reckless assault and battery involves the "use. . .of physical force," because the force involved in the qualifying offense is volitional, not accidental, and is undertaken with the understanding that the force is "substantially likely" to cause harm. *Voisine*, 136 S. Ct. at 2278-79. The Mississippi statute requires a volitional act and does not criminalize accidental behavior; every method of committing the offense requires the use or attempted use of physical force against another. Accordingly, McClinton's career offender designation is not invalidated under *Johnson*, even assuming its applicability to the Guidelines.

## VI. Conclusion

The Court hereby **ORDERS** that McClinton is not entitled to relief under 28 U.S.C. § 2255, and his motion to vacate, set aside, or correct sentence [983][991] is **DENIED**. The Court will enter final judgment by separate order.

**SO ORDERED**, **THIS** the 12th day of December, 2016.

    /s/ Sharion Aycock
    **U.S. DISTRICT JUDGE**